**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

--------------------------------------------------------x

Wilhelm, et al.                   :

          Plaintiffs,      :

    :

    :     2:15-cv-00245-APG-VCF

          - against -      :    **AFFIDAVIT OF**
    :    **RICHARD N. RUST**

    :

Beasley, et al.                :

         Defendants.     :

    :

--------------------------------------------------------x

STATE OF RHODE ISLAND)

               :       ss.:

COUNTY OF PROVIDENCE)

          RICHARD N. RUST, being duly sworn, deposes and affirms:

          1.       I am the Fund Manager of the National Retirement Fund (the "Fund"), one of the defendants in the above-captioned action.  I make this affirmation, based upon my personal knowledge of the facts recited herein and upon records maintained under my supervision, in support of the Fund's Motion to Dismiss the Complaint for Lack Of Venue Or, In The Alternative, To Transfer Venue.

**<u>The Fund.</u>**

          2.       The Fund is a multiemployer plan within the meaning of Section 3(37) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1002(37).  It provides retirement and related benefits to eligible participants and beneficiaries.

          3.       In my capacity as Fund Manager, I oversee the administration of the Fund. I am familiar with the Fund's administrative procedures, the Fund's  operating documents and the employers that contribute to the Fund.

4.      The Fund does not maintain an office in the District of Nevada, nor does it have a bank account, telephone listing, post office box, property or other assets there.

5.      The Fund's administrative offices are located at 333 Westchester Avenue, North Building, White Plains, New York, 10604 and 6 Blackstone Valley Place, Suite 302, Lincoln, Rhode Island 02865.  In fact, at all times during the period from October 1, 2007 to date, in addition to offices in Lincoln, Rhode Island, the Fund has maintained administrative offices within the Southern District of New York, and keeps many of its records there.

6.      The Fund regularly commences actions in the Southern District of New York, including more than fifty ERISA-related actions since January 1, 2013, primarily to collect withdrawal liability, contributions and other payments owed to the Fund.  The Fund has never commenced an action in the District of Nevada.  Likewise, prior to this litigation, the Fund has never been sued or appeared in an action in the District of Nevada.

7.      The Fund's legal counsel, Schulte Roth & Zabel LLP, is located at 919 Third Avenue, New York, New York 10022.

8.      The Fund has more than 400,000 participants.

9.      Approximately one percent of the Fund's participants are located in the District of Nevada.[1]

10.      The Fund's activities in the District of Nevada are extremely limited:  it pays pension benefits to plan participants and beneficiaries and receives contributions from two

---

[1]      There are 2522 active participants, 740 retirees and estimated less than 1000 terminated vested participants in the District of Nevada.

contributing employers.  None of the employers who contribute to the Fund are parties to this litigation.  Likewise, none of the Fund's Nevada-based participants are parties to this litigation.[2]

11.     During the period from October 1, 2007 to date, a majority of the Fund's operations, including decisions related to the administration of the Fund, have taken place within the Southern District of New York.  The Fund's business activities have also taken place in the District of Rhode Island, but never in the District of Nevada.

12.     A true and correct copy of the Fund's Form 5500 for plan year 2013 (without its schedules) is annexed hereto as Exhibit 1.  As reflected in this filing, the Fund is administered at offices in White Plains, New York, which is located in the Southern District of New York.  *See* Form 5500 at Part II 2a, 3a.  The Fund is also administered from its Rhode Island offices.

**The Fund's Board of Trustees.**

13.     The Board of Trustees ("Trustees") is the plan sponsor of the Fund.  The Board consists of forty-five Trustees, roughly half of whom are designated by employers that contribute to the Fund ("Employer Trustees") and half of whom represent the union ("Union Trustees").  Thirty-six of the forty-five Trustees are parties to this litigation (eleven are plaintiffs and twenty-five are defendants).  Not a single one of those thirty-six Trustees are residents of the District of Nevada.  The majority of the Trustees are based primarily on the east coast.  The vast majority of the Trustees live at least 1000 miles or more away from Nevada.  The Fund has only one Trustee (out of its forty-five Trustees) who resides in the District of Nevada.  That Trustee is the employer representative of Caesars Entertainment Corporation ("Caesars").  He is not a party to this litigation.

---

[2]     Five of the Plaintiffs in this action are both Trustees and participants of the Fund.  However, none of those five Trustees live in Nevada, work in Nevada or receive benefits in Nevada.  Further, those five Trustees commenced this action solely in their capacity as Fund Trustees, not as Fund participants.

14.     During the period from January 1, 2010 to date, the Trustees have conducted nine (of nineteen) in-person Trustee meetings of the Fund within the Southern District of New York (in New York City and Westchester County, NY).  Since January 1, 2010, the Trustees have conducted forty-four (of fifty-nine) Trustee committee meetings in the Southern District of New York (New York City or Westchester County).

15.     During the period from January 1, 2010 to date, all in-person Trustee meetings and in-person Trustee committee meetings, other than those in New York, have taken place in Rhode Island, Wisconsin, Florida, Illinois or New Jersey, but never in the District of Nevada.

**The Dispute.**

16.     This action concerns a dispute between one group of Trustees against another group of Trustees, regarding the Fund's decision to expel certain subsidiaries of Caesars (the "Caesars Subsidiaries") from the Fund's Legacy Plan.

17.     None of the Trustees who participated in the vote resulting in the Fund's decision to expel the Caesars Subsidiaries from the Legacy Plan reside in Nevada.  The single Fund Trustee who resides in Nevada is an employer representative of the Caesars Subsidiaries and was prohibited, by statute from participating in the vote.  *See* Section 406(b)(2) of ERISA, 29 U.S.C. § 1106(b)(2).

18.     The first time any of the Trustees met for the purpose of discussing taking action vis-à-vis Caesars was during a meeting of certain Trustees in New York City on November 20, 2014.  At that meeting, the attendees considered what action it might take in connection with a plan by certain of the Caesars Subsidiaries' affiliates to reorganize its assets and prepare to file for bankruptcy.  The Fund's Trustees continued to discuss that issue between

November 20, 2014 and January 12, 2015, including during an in-person Trustee meeting on December 11, 2014, a telephone call that took place on January 9, 2015 and during a number of other telephone calls and e-mail communications. The December 11, 2014 Trustee meeting took place within the Southern District of New York and the January 9, 2015 call originated in Rhode Island.

19. On January 12, 2015, the Fund's Trustees voted on whether to continue accepting contributions from the Caesars Subsidiaries. That vote was conducted via telephone conference. I originated the telephone conference line for the vote from the Fund's offices in Rhode Island. The Fund tallied the votes in Rhode Island. Thirteen Union Trustees voted to expel the Caesars Subsidiaries from the Fund's Legacy Plan and eleven Union Trustees voted against it. Thirteen Employer Trustees voted to expel the Caesars Subsidiaries from the Fund's Legacy Plan and six Employer Trustees voted against it. As the Union Trustees' majority vote counts as one vote and the Employer Trustees majority vote counts as one vote, the final count was two-to-zero in favor of expelling the Caesars Subsidiaries from the Fund's Legacy Plan.

20. Once the Fund decided, by vote, to expel the Caesars Subsidiaries, the Fund issued a letter to the Caesars Subsidiaries, written in and sent from New York City. On January 13, 2015, the Fund issued a second letter that was written in and sent from New York City that clarified to which plan the Caesars Subsidiaries could no longer contribute.

21. Each of the Trustees who participated in the vote were acting in their capacities as fiduciaries of the Fund, *i.e.*, pursuant to their fiduciary obligations to manage an employee benefit plan administered in New York and Rhode Island.

22. The Fund's participants in Nevada are not harmed as a result of the decision to expel the Caesars Subsidiaries from the Fund. The decision was made to protect the

Fund's more than 400,000 participants — including those residing in Nevada — from the potential financial impact to the Fund of an employer reorganizing its assets and going into bankruptcy.  The NRF froze the Legacy Plan, effective December 31, 2014, and established the Adjustable Plan, effective January 1, 2015.  By law, all employees of the Fund's contributing employers remain vested in their pension benefits in the Legacy Plan.  If any employee was not vested in his or her benefits in the Legacy Plan, that employee's benefits will continue to vest on the same schedule as they did prior to the Fund's expulsion of the Caesars Subsidiaries from the Legacy Plan due to their continued participation in the Adjustable Plan.

**Related Actions.**

23.    On January 8, 2015, Caesars filed a complaint in the Southern District of New York against the Fund's Trustees and the Fund's Legacy Plan, captioned *Caesars Entertainment Corp. v. Pension Plan of the Nat'l Retirement Fund & Bd. of Trustees of the Nat'l Retirement Fund*, 1:15-cv-00138-LAK-JLC ("SDNY Action No. 1").  The Complaint filed in SDNY Action No. 1 is attached hereto as Exhibit 2.  The SDNY Action No. 1 concerns similar parties, facts and issues as those involved here, as Plaintiffs in this proceeding have acknowledged by identifying the SDNY Action No. 1 as "related" to this proceeding on the Case Information Sheet they attached to the Complaint in this action.  (*See* Case Information Sheet, attached hereto as Exhibit 3.)

24.    On March 18, 2015, the Fund commenced an action in the Southern District of New York against certain Caesars' affiliates, captioned *The Nat'l Retirement Fund and Rust v. Caesars Entertainment Corp.*, 1:15-cv-02048-LAK ("SDNY Action No. 2").  On March 19, 2015, the SDNY Action No. 2 was deemed related to the SDNY Action No. 1.  (A

printout of the docket sheet showing that SDNY Action No. 1 and SDNY Action No. 2 were deemed "related" is attached hereto as Exhibit 4.)

_____

Richard N. Rust

Subscribed and Sworn before me
this _8th_ day of _April_ , 2015.

_____

OFFICIAL SEAL
MONICA BAUMAN
NOTARY PUBLIC - RHODE ISLAND
Commission Expires February 18, 2017

8

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Fed. R. Civ. P. 5(b), I hereby certify that on the 13 day of April 2015, service of the foregoing Affidavit of Richard N. Rust was made to all counsel in the action through the Court's CM/ECF system.


_____/s/_____
Taleah E. Jennings